IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVE A. PRICE, *et al.* on behalf of themselves and others similarly situated as a collective action under the Fair Labor Standards Act,<br><br>               Plaintiffs,<br><br>v.<br><br>PUBLIC SERVICE COMPANY OF OKLAHOMA, an Oklahoma corporation,<br><br>               Defendant. | Case No. 13-CV-514-GKF-FHM |

## OPINION AND ORDER

Before the court is the Motion for Summary Judgment [Dkt. #189] filed by defendant Public Service Company of Oklahoma ("PSO"). Plaintiffs, PSO employees, work in regularly scheduled shifts, and in addition, they are assigned on-call time. Plaintiffs have different specific job titles, but for present purposes they can be divided into three larger groups: general servicers, crew members, and warehousemen. General servicers are assigned to be on call for one week approximately one out of every ten weeks. Crew members are assigned to be on call for one week approximately one out of every five weeks. These one week assignments are made several months in advance. General servicers and crew members are expected to accept the calls they receive when on call, although they can "swap" on-call time with other employees. Warehousemen[1] are not assigned specific on-call time, and may decline callouts. Plaintiffs argue the Fair Labor Standards Act ("FLSA") requires PSO to compensate them for the time they spend on call, but not working. PSO seeks summary judgment in its favor on plaintiffs' claims.

---

[1] Only plaintiff Domres is a warehouseman.

I. **Standard of Review**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

II. **Analysis**

The FLSA requires an employer to pay an employee for on-call time not actually worked by the employee only in certain circumstances.  Courts frame the ultimate question as whether the employee is 'engaged to wait' or 'waiting to be engaged[.]" *See Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128, 1132 (10th Cir. 2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S.134, 137 (1944)) (internal alterations omitted).  Alternatively, courts ask whether on-call time is spent

2

predominately for the benefit of the employer or the employee.[2] *Id.* (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).

In making this determination, the court considers several factors, including any agreement between the parties, the nature and extent of any restrictions on the employee while on call, the relationship between the services rendered and the on-call time, and "all surrounding circumstances." *Id.* (citing *Boehm v. Kansas City Power & Light Co.*, 868 F.2d 1182, 1185 (10th Cir. 1989) (citing in turn *Skidmore*, 323 U.S. at 137). The court should also assess "the degree to which the burden on the employee interferes with his or her personal pursuits" by examining the "number of calls, [the] required response time, and [the employee's] ability to engage in personal pursuits while on call." *Id.* (citing *Armitage v. City of Emporia*, 982 F.2d 430, 432 (10th Cir. 1992) & *Renfro v. City of Emporia*, 948 F.2d 1529, 1537-38 (10th Cir. 1991)).

### A. Frequency of Callouts

Although the court is to consider all of the factors described above, one Tenth Circuit panel observed—after reviewing prior Circuit decisions on the subject— that the "critical distinction" between cases in which on-call time was found to be compensable and those in which it was not is "the frequency of calls." *Pabst*, 228 F.3d at 1134. When assessing the

---

[2] PSO notes that the Supreme Court recently rejected a "predominately for the benefit of the employer" test for determining whether activity counts as compensable work. *See Integrity Staffing Sol. v. Busk*, 135 S.Ct. 513, 519 (2014). PSO argues "the Supreme Court's rejection of the 'benefit of the employer' test in determining whether a postliminary activity is compensable [the issue in *Integrity Staffing*] seems equally applicable to determining whether on call time is compensable." [Dkt. #189, p. 38]. Plaintiffs disagree, arguing that *Integrity Staffing* is "irrelevant" to on-call time because it dealt exclusively with postliminary activities under the Portal to Portal Act. [Dkt. #205, p. 26, n. 5]. *Integrity Staffing* does not fit in the on-call time setting. *Integrity Staffing* focused on whether activity, specifically passing through a security screening, was "integral and indispensable" to the work that an employee is paid to perform, ultimately concluding that it was not. *Integrity Staffing*, 135 S.Ct. at 519. Were the court to apply the "integral and indispensable" test here, it would seem that waiting—the "activity" performed during nonworking on-call time—would never be compensable. However, the question with on-call time has always been whether the employee was waiting to be engaged or engaged to be waiting. *See Skidmore*, 323 U.S. at 137. If an employee is engaged to be waiting, the waiting is compensable not because it is "integral and indispensable" to the work she *would* perform if called in, but rather because the waiting *is itself* the activity she is *being* paid to perform. The court concludes *Integrity Staffing* did not disturb the on-call time jurisprudence of the Supreme Court and the Tenth Circuit.

frequency of calls, "the proper question is which [prior] case is most analogous." *Id.* In cases in which courts have found on-call time compensable, the employee was usually called out multiple times in an average 24-hour period. *See e.g.*, *Renfro*, 948 F.2d at 1537 (employees called out 3-5 times in a 24-hour period and had to respond within fifteen minutes); *Pabst*, 228 F.3d at 1131 (employees called out 3-5 times a night and were required to check their computers every fifteen minutes to see if they had received a call). By contrast, courts have not found on-call time compensable when employees are called out only a few times a week on average. *See e.g.*, *Boehm v. Kansas City Power & Light Co.*, 868 F.2d 1182, 1183 (10th Cir. 1989) (power company linemen called out no more than once a day and required to accept approximately one third of calls received); *Armitage*, 982 F.2d at 432 (police detectives "called in on average less than two times per week"); *Andrews v. City of Skiatook*, 123 F.3d 1327, 1330 (10th Cir. 1997) (EMT called out on 16-28% of on-call shifts).

In this case, plaintiffs calculate[3] that they were called out[4] on average between 32% and 34% of the days they were on call from 2012 to 2014, ranging from a low of 16% of on-call days—plaintiff Jeffords accepted callouts on 15 of 91 on-call days in 2012—to a high of 63% of on-call days—plaintiff Bunch accepted callouts on 12 of 19 on-call days in 2014. [*See* Dkt. #205-46, p.2]. Put another way, during a week of on-call time, plaintiffs were called out between a little over 1 and a little under 4.5 times, with an average of between 2.25 and 2.5 callouts a week. [*See id.*]. The frequency of callouts in this case is "most analogous" to the cases in which on-call time was determined not to be compensable. *See Pabst*, 228 F.3d at 1134.

---

[3] Unlike PSO, plaintiffs included in their tally of callouts instances in which they were assigned overtime work that extended their normal workday into what would otherwise have been on-call time, also called "holdovers."

[4] Plaintiffs argue PSO's tally of callouts based on its ARCOS database is unreliable based on entries for plaintiff Harper. Plaintiffs argue Harper had several call-outs between May 16, 2012 and October 31, 2012 that are not accounted for in PSO's calculations. However, as demonstrated in the documentation attached to PSO's reply, Mr. Harper was not on call at the time of those instances, but instead was simply working regular overtime or swapping out a call with another employee. [*See* Dkt. #213-24 and exhibits thereto].

### B. <u>Agreement of the Parties</u>

The parties disagree as to the legal relevance of an "agreement between" an employer and employees regarding the compensability of on-call time—*e.g.*, a collective bargaining agreement ("CBA"). *Pabst*, 228 F.3d at 1132 (quoting *Boehm*, 868 F.2d at 1885). Plaintiffs argue an agreement merely "informs the court of the employer's requirements," but that the parties' *characterization* of on-call time—*i.e.*, characterizing on-call time as compensable or not—is irrelevant to whether the on-call time *must* be compensable *under the FLSA*. In support of this position, plaintiffs note—correctly—that employers and employees may not circumvent the requirements of the FLSA by contract or other agreement. *See Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived.").

PSO argues an agreement between the parties is relevant, and in this case highly relevant because of the clarity with which PSO claims the CBA between PSO and the IBEW addresses the compensability of on-call time. PSO does not argue—and in its reply, expressly disclaimed the argument—that an agreement can trump the FLSA, or even that an agreement is dispositive of whether or not on-call time is compensable.

As noted above, the case law on this subject lists the parties' agreement alongside the other factors to be considered when determining whether on-call time is compensable. There is no suggestion in that case law that the parties' agreement is *irrelevant* to that analysis. Plaintiffs' interpretation would effectively remove the parties' agreement from the list of factors to be considered, rendering the agreement merely a piece of evidence establishing a set of facts to which the court could apply the remaining factors. There is no support for this position in the authorities plaintiffs cite. Whether or not the employer and employees characterized on-call time as compensable in an agreement is relevant to whether or not the employee was understood to

be, and in fact was, engaged to be waiting and thus to whether the on-call time is compensable under the FLSA.

An agreement between and employer and employee that certain time is not compensable may be express or implied. *See Braziel v. Tobosa Dev'l Serv.*, 166 F.3d 1061, 1063 (10th Cir. 1999); *see also* 48B Am. Jur. 2d Labor and Labor Relations § 3143 (FLSA "specifically allows the exclusion of . . . time from hours worked . . . if it is excluded by the express terms of, or by custom or practice under, a bona fide collective bargaining agreement . . . . [A] particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence.").

Viewing the evidence before the court in the light most favorable to plaintiffs, PSO has never paid plaintiffs for nonworking on-call time. Plaintiffs have worked the entirety of their employment at PSO without receiving this pay. PSO put in place the current on-call process for general servicers in 2004 and for crews in 2008, although the imposition of that process was not the product of an agreement with plaintiffs or with their union—the International Brotherhood of Electrical Workers ("IBEW"). In 2007, PSO and the IBEW negotiated a CBA containing a section titled "Call-Out/Employee Availability for Overtime Work" that provides as follows:

> Paid time will begin upon arrival at the reporting location and paid time will end when dismissed from the reporting location. However, paid time for an employee assigned a Company vehicle will begin when leaving in the vehicle and paid time will end when returning the vehicle home; and, a Working Foreman's paid time will begin when called if the Working Foreman has to call other employees for work.
>
> \*\*\*
>
> When an employee is requested to remain at a particular place on "stand by" status, the employee shall be paid for such "stand by" status at the appropriate overtime rate. However, an employee who notifies their supervisor or the Company of their availability for work (i.e., storm restoration work), shall not be considered as being on "stand by." [Dkt. #189-13, pp. 2-3].

6

The same language appears in subsequent CBAs negotiated in 2009 and 2012. [Dkt. #189-14, pp. 2-3; Dkt. #189-15, pp. 2-3].

Plaintiffs argue PSO imposed the on-call process unilaterally, and thus, there was no "meeting of the minds" as to the on-call process. Furthermore, plaintiffs argue they, *via* the IBEW, disputed the on-call process in arbitration in 2009.

The 2009 arbitration began when several employees were disciplined because they were on-call and were called out, but did not report for duty or find a replacement. [*See* Dkt. #205-24; Dkt. #205-25; Dkt. #205-26; Dkt. #205-28; Dkt. #205-29; Dkt. #205-30]. The IBEW argued that because the employees were required to either take the call or find a replacement, they were on stand-by status—as defined in the CBA—when on-call and should be paid accordingly. [*See* Dkt. #205-27]. On January 18, 2010, the arbitrator concluded, *inter alia*, that the CBA's stand-by provision was not applicable because PSO had not directed the employees to remain "at a particular place," as required by the stand-by provision. [Dkt. #213-19, p. 21].

The arbitration documentation shows that there may have been some confusion among PSO's employees as to whether callouts were mandatory and whether the callout procedure would be enforced with disciplinary action. Thus, a reasonable jury could conclude that—prior to the entry of the arbitration award—there was no agreement, either express or implied, that PSO would not compensate nonworking on-call time even though employees were required, on pain of discipline, to either take a call or find a replacement. However, after the issuance of arbitration award on January 18, 2010, there could have been no confusion that PSO would not pay for nonworking on-call time. Plaintiffs either continued or started working at PSO with that understanding, which amounts to an implied agreement. Furthermore, the IBEW and PSO negotiated a new CBA in 2012 with the same language, knowing that the callout language in the

7

CBA was understood not to include pay for nonworking on-call time. The evidence regarding the arbitration shows that the 2012 CBA's on-call pay provision was the product of a "meeting of the minds" on the issue of nonworking on-call time compensability.

### C. Relationship to Services Rendered

Plaintiffs do not dispute that, during nonworking on-call time, their activities bear no relation to the work they perform while engaged—PSO's electrical repair work. They claim, however, that this lack of relationship is irrelevant. In support of this position, plaintiffs argue that if the law required the activities undertaken while on-call to be related to the services performed, no on-call time would be compensable. This argument is not persuasive.[5] The question in on-call cases, unlike other overtime cases, is whether the employee is *engaged to be waiting*. Thus, where on-call time is compensable, waiting *is the activity* for which the employee is paid. Under this factor, the court compares the *activities* the employee engages in *while waiting* to those she is paid to perform when engaged. Thus, it is relevant to the analysis here that, when on call, plaintiffs' activities are unrelated to PSO's electrical repair work.

### D. Required Response Time

PSO argues it does not have a specific required response time. Rather, PSO argues employees are expected to respond to callouts within a "reasonable" time. To establish a required response time,[6] plaintiffs argue several of them were disciplined for not responding

---

[5] Plaintiffs also point out that PSO's corporate representative stated that on-call time is a "fundamental responsibility" of plaintiffs' jobs. This general statement reveals nothing about the activities in which plaintiffs engage when on call or the relationship between those activities and the services plaintiffs perform when working.

[6] Plaintiffs argue working foremen have a required response time of zero because they are paid from the moment they accept a call. Similarly, plaintiffs argue general servicers are paid as soon as they turn on the computer in their company vehicle. Thus, plaintiffs argue the amount of time between one of these employees accepting a call and going on the clock can be fairly short, as short as ten minutes for general servicers and no time at all for working foremen. This argument is not persuasive. Most importantly, the amount of time it usually takes certain employees to respond to a call—an average response time—does little to establish the amount of time PSO *allows* its employees to take before responding—the required response time. The required response time described in *Pabst* and similar cases is the amount of time from *receiving* the call to responding to the call. Plaintiffs' argument that

quickly enough. The disciplined employees took over an hour and a half—and in one instance over two and a half hours to respond after accepting a callout. [*See* Dkt. #205-38; Dkt. #205-51; Dkt. #205-52; Dkt. #205-53]. Plaintiffs point to statements in the documentation of those disciplinary actions, and in the testimony of PSO's corporate representative,[7] that employees are expected to respond within roughly 30 minutes to an hour. [*See* Dkt. #205-38]. Plaintiff also notes that under the CBA between the IBEW and PSO, employees are required to live within 25 miles—or 30 roadway miles—from their reporting location. [*See* Dkt. #205-9, p. 4]. PSO notes that several of the plaintiffs live more than 30 minutes away from their reporting location, and thus that PSO's "reasonable time" to respond is not capped at 30 minutes.

In sum, because plaintiffs have presented no evidence that PSO's "reasonable" time standard is applied to require a response time of less than 30 minutes, the court will, for summary judgment purposes, consider PSO's required response time to be at least 30 minutes.

### E. Restrictions While On Call and Burdens on Personal Pursuits

The evidence provided by the parties reveals relatively few explicit restrictions for PSO employees on call. Employees are required to accept the call and respond within a reasonable time prepared to work. PSO notes that plaintiffs may leave a cell phone number, and thus can travel outside the home as long as they are still able to respond to a call within a reasonable time. Plaintiffs note that although leaving a cell phone number allows them to leave home, they must nevertheless stay in areas where there is adequate cell phone signal reception.

Plaintiffs argue ARCOS occasionally calls employees out in error, even when they are not on call or when the work they are called out for is not in their territory. And yet, plaintiffs do

---

the amount of time between *accepting* the call and responding to it can be short, or in some cases, nonexistent, does not address the entire response time as discussed in *Pabst*.
[7] PSO's corporate representative testified that, because plaintiff Speer's average response time was 30 minutes, "a reasonable time" for Speer to respond to a call would be closer to 30 minutes than 45 minutes. [Dkt. #218-2, p. 49].

9

not argue the employees who received such calls in fact responded to them, and thus, the only added burden is receiving an erroneous call.

Plaintiffs argue the requirement of responding to calls effectively imposes other restrictions on their activities. The parties provide several excerpts from plaintiffs' depositions discussing specific activities plaintiffs engage in, or do not engage in, while on call. The deposition testimony shows that plaintiffs have engaged in some personal activities while on call, including church attendance; shopping; dining out; hunting and fishing; playing in, coaching at, or attending sporting events; household chores; tending cattle or other animals; exercising; reading or watching TV or movies; socializing with family or friends; and personal car repair and other projects. [*See* Dkt. #189-26 through Dkt. #189-46]. In response, plaintiffs provide deposition excerpts in which they testify they are limited in their ability to engage in several of these personal pursuits because they must be available if called out. [*See* Dkt. #205-32 through Dkt. #205-37].

Specifically, some plaintiffs testified that they choose not to, *e.g.*, attend movies, eat at restaurants, coach their children's sports teams, go to church meetings, or begin large home improvement projects because there is a risk they will be called out before the activity is completed or because it can be difficult to arrange childcare, especially if they are single or have a working spouse. Some plaintiffs testified that if they wish to engage in an activity outside the home with their friends or family, they must drive a separate car and take their work clothes with them in case they need to proceed directly to work. Another plaintiff testified that he could not travel far from home because, if he were called out, he would have to return home to pick up his company car, which could not be used for personal activities. Some plaintiffs testified in their depositions that while on call, they could not work a second job or take on extra work with PSO

because they had to be available for callouts. PSO's corporate representative testified that an employee working a second job while on call would have to make arrangements to leave that job if called out by PSO. Viewing this combined testimony in the light most favorable to plaintiffs, plaintiffs are able to engage in many personal pursuits while on call, although they are limited in how far they can travel within the area and there are some logistical difficulties that discourage, and may even prevent, some specific activities.

### III.    Conclusion

Although the inquiry is "highly individualized and fact-based"—see *Pabst*, 228 F.3d at 1132—it is possible to resolve the question of the compensability of on-call time at the summary judgment stage. *See, e.g.*, *Gilligan v. City of Emporia*, 986 F.2d 410, 413 (10th Cir. 1993) (affirming summary judgment because although "plaintiffs' activities may be somewhat restricted while they are on call, the restrictions are not so prohibitive that it can be said that their on-call time is spent predominately for the employer's benefit."). The restrictions on plaintiffs while on call are clearly more analogous to the restrictions in cases where the Tenth Circuit has found on-call time not compensable. *See Boehm*, 868 F.2d at 1185 (plaintiffs were free to leave company premises and engage in personal pursuits as long as they could be reached and report for work one-third of the time they were called). Merely having to be available for calls is not enough on its own to render on-call time compensable under the FLSA. *See Norton v. Worthen Van Serv.*, 839 F.2d 653, 655 (10th Cir. 1988) (plaintiffs could leave employer's premises and had the "opportunity to pursue personal business between assignments, even if being on call [did] limit their activity.").

Plaintiffs here are called out on average between 2.25 and 2.5 times a week when on call. They have never been paid for nonworking on-call time and have been working under an implicit agreement to that effect since no later than January 18, 2010 and an explicit agreement in the

11

2012 CBA.  They are free to leave PSO's premises, and are allowed to travel anywhere they can be reached by cell phone and can respond to calls within a reasonable time—no less than approximately 30 minutes.  They are free to pursue personal activities while on call, and may swap out on-call time with other employees.  The inconveniences inherent in being on call under these conditions do not render plaintiffs' on-call time compensable under the FLSA.

Accordingly, PSO's Motion for Summary Judgment [Dkt. #189] is hereby granted.

IT IS SO ORDERED this 15th day of April, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT